UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JACQUELINE BUCKHOLZ,<br><br>      Plaintiff,<br>  v.<br><br>KELSO HOUSING AUTHORITY,<br><br>      Defendant. | Case No. 3:25-cv-05170-TLF<br><br>ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. 10) |

This matter comes before the Court on Plaintiff Jacqueline Keri Buckholz's motion for preliminary injunction. Dkt. 10. The briefs have been submitted and the Court heard oral argument. Dkts. 14 (Defendant's Response); Dkt. 21 (Plaintiff's Reply); Dkt. 25. For the reasons below, the Court grants Plaintiff's motion for preliminary injunction under Federal Rule of Civil Procedure ("FRCP") 65.

FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 2025, Plaintiff filed a complaint against Defendant Kelso Housing Authority asserting claims for violations of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA"); the Washington Law Against Discrimination, RCW 49.60.222; Section 504 of the Rehabilitation Act of 1973; and the Due Process Clause under the Fourteenth Amendment. Dkt. 1[1].

---

[1] Plaintiff focuses on her claims under the FHA and Due Process Clause for purposes of this motion.

Plaintiff states she is an individual with significant mental disabilities and has lived in her home in Kelso for 21 years helped by a housing voucher from Defendant, a local public housing agency. Dkt. 11, Declaration of Jacqueline Buckholz, ¶¶2-3[2]. Until August 2024, Defendant subsidized about 70 percent of Plaintiff's rent; Plaintiff paid the remaining amount from her disability benefits under the Social Security Income ("SSI") Program. *Id.*

On June 20, 2024, Plaintiff received a letter dated June 13, 2024, that Defendant would be terminating her housing assistance on July 31, 2024, for "fail[ing] to comply with the request to inspect the unit for Housing Quality Standards …." *Id.* at ¶4. *See also* Dkt. 11 at Exhibit 1. Defendant states Plaintiff was provided a few opportunities to comply with the Housing Quality Standards. *See* Dkt. 15, Declaration of Shelly Watkins, at Exhibits B, C, D, E, F.

The June 20, 2024, letter further stated, "If you wish to appeal this decision, you have the right to an informal hearing. The request must be submitted to this agency by 2:00p.m. within 10 business days of this letter. If your request is not received within the time period indicated above, you will waive your right to hearing and our decision to terminate your assistance will become final." *Id.*

Plaintiff states she did not understand what steps she was required to take to request an informal hearing upon reading the letter. *Id.* As a result, Plaintiff called the Kelso Housing Authority 34 times in an attempt to better understand the letter and request an informal hearing. Dkt. 11 at ¶5.

---

[2] Plaintiff provides a detailed background of the inception of the Housing Choice Voucher Program established by the Housing and Community Development Act of 1974 in her motion for preliminary injunction. Dkt. 10.

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DKT. 10) - 2

1   Limayri Disla, an employee working for Defendant, states that Plaintiff came into the office and asked Ms. Disla how to figure out the deadline to file an appeal. Ms. Disla helped Plaintiff count the number of days Plaintiff had to respond to the letter and determined Plaintiff had until June 28, 2024, to appeal. Dkt. 16, Declaration of Limayri Disla. In her declaration, Ms. Disla did not identify the date on which Plaintiff came into the office. Plaintiff, in her declaration supporting her reply brief, states she did not meet with Ms. Disla before July 2, 2024. Dkt. 23, Declaration of Jacqueline Buckholz, ¶3.

Plaintiff submitted a written request for an informal hearing using a form from Defendant's office on July 2, 2024. *Id.* ¶8. *See also* Dkt. 11 at Exhibit 2. On July 18, 2024, Defendant informed Plaintiff in a letter that Plaintiff's request for a hearing was untimely and should have been provided to Defendant no later than Friday, June 28, 2024. *See* Dkt. 11 at Exhibit 3. Defendant's office is closed on weekends and federal holidays, and is closed to the public on Fridays. The letter added that "a request for an informal hearing must be made in writing and delivered to the Housing Authority either in person or by first class mail." *Id.*

Later, Plaintiff left messages for Defendant regarding the termination of her participation from Defendant's voucher program. Defendant wrote Plaintiff another letter in response to those messages on July 29, 2024, explaining the voucher was terminated for Plaintiff's failure to comply with the Housing Quality Standards requirements, and Plaintiff would not receive an informal hearing to appeal the decision because her request for a hearing was untimely. *Id.* at Exhibit 4.

On August 2, 2024, Plaintiff wrote a letter to Defendant explaining her request was submitted within 10 business days because she received the letter on June 20,

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DKT. 10) - 3

2024, and did not believe Fridays were considered "business days," and she suffers from mental health issues, including anxiety, depression, and bipolar disorder, which significantly impact her day-to-day life. *Id.* at Exhibit 5. Plaintiff requested "some understanding and support" from Defendant. *Id.*

After being unable to pay her entire rent in August and September, Plaintiff's landlord filed an eviction proceeding against her. Dkt. 17, Declaration of Nicole Tideman, Exhibit A. Plaintiff's court-appointed counsel in her eviction proceeding managed to help Plaintiff find short-term rental assistance in lieu of the voucher. Dkt. 11 at ¶12.

On October 8, 2024, her counsel with Northwest Justice Project wrote a letter to Defendant on her behalf requesting a reasonable accommodation — they requested the Defendant grant an informal hearing for Plaintiff to get the voucher back, or in the alternative, extend her tenancy until she is able to secure new housing, or a at a minimum, to extend tenancy until January 6, 2025. *Id.* at Exhibit 6. Defendant responded to this letter on October 16, 2024, stating that it had "accommodated Ms. Buckholz on multiple occasions over the years," including after she received her termination notice and a Kelso Housing Authority staff member explained "business days" to Plaintiff. *Id.* at Exhibit 7.

At oral argument, the parties agreed that Plaintiff will no longer have access to rent assistance starting in May 2025 and will be at risk of eviction.

DISCUSSION

Injunctions are "to be used sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (quoting *Irwin v. Dixon*, 50 U.S. 10, 33 (1850)); *see also Sampson v. Murray*, 415 U.S. 61, 83 (1974). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

To obtain a preliminary injunction, a party must demonstrate that: (1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. The moving party must make a showing on all four factors to obtain a preliminary injunction. *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (citing to *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Alternatively, under Ninth Circuit precedent, "a plaintiff may also obtain a preliminary injunction by showing 'serious questions go[] to the merits' of its claims and a balance of the hardships that tip "sharply" towards the plaintiff, so long as it makes a showing on the other two factors." *A Woman's Friend Res. Clinic*, 901 F.3d at 1167 (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1135). But, a plaintiff may not obtain an injunction merely because an irreparable injury is possible, the plaintiff must show that the irreparable injury is likely absent preliminary relief. *Am. Trucking Association, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DKT. 10) - 5

(1) Likelihood of Success

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015). Under the Ninth Circuit sliding scale approach, the moving party must demonstrate, at minimum, "a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1106 (9th Cir. 2012) (quoting *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009)).

Here, there is a fair chance of success on the merits of Plaintiff's claims for disability discrimination in violation of the FHA and the Due Process Clause.

A. Fair Housing Act

"To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) [plaintiff] suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation[3]." *Giebeler v. M & B Associates,* 343 F.3d 1143, 1147 (9th Cir.2003) (citing *United States v. California Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1380 (9th Cir.1997))

"[O]nly 'reasonable' accommodations are required by the FHAA." *Giebeler,* 343 F.3d at 1148 (citing 42 U.S.C. § 3604(f)(3)(B)). "Ordinarily, an accommodation is reasonable under the FHAA 'when it imposes no fundamental alteration in the nature of

---

[3] Although the statutory language uses the term "handicap", the Court will use the term "disability" in the rest of this opinion.

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DKT. 10) - 6

the program or undue financial or administrative burdens.' " *Giebeler,* 343 F.3d at 1157 (quoting *Howard v. City of Beavercreek,* 276 F.3d 802, 806 (6th Cir.2002)). "To prove that an accommodation is necessary, '[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.' " *Giebeler,* 343 F.3d at 1155 (citing *Smith & Lee Associates, Inc. v. City of Taylor, Mich.,* 102 F.3d 781, 795 (6th Cir.1996)).

Plaintiff submits a declaration stating she receives SSI disability benefits, and has "significant mental disabilities that amount to my anxiety causing me to panic easily, not being able to concentrate, feeling scattered and becoming depressed." Dkt. 11 at ¶11. In her letter dated August 2, 2024, to Defendant, she also specified that she suffers from anxiety, depression, and bipolar disorder. Dkt. 11 at Exhibit 5.

The record includes various correspondence from Defendant – in each letter, Defendant denies Plaintiff's request for an informal hearing. *See* Dkt. 11 at Exhibit 3 ("As a result of your late response, your request for an informal hearing will not be granted."); Exhibit 4 ("Your request was not received until several days following the due date, therefore, your participation in the HCV program will end effective 7/31/2024."); Exhibit 7 ("KHA will not be changing its decision.").

Plaintiff has made a prima facie case that she suffers from a disability as defined by the FHA because she suffers from a mental impairment which substantially limits her ability to concentrate and understand the notifications and letters sent from Defendant. The Court finds that the record, as revealed by the letters exchanged between the parties, provides prima facie evidence that Defendant knew or reasonably should have

known of Plaintiff's disability and refused to accommodate Plaintiff. *See, e.g.*, Dkt. 11 at Exhibit 5.

Plaintiff has also made a prima facie showing that she requested a reasonable and necessary accommodation. *See Giebeler,* 343 F.3d at 1155 ("Imposition of burdensome policies ... can interfere with disabled persons' right to use and enjoyment of their dwellings, thus necessitating accommodation.") (citing *Shapiro v. Cadman Towers,* 51 F.3d 328, 335–36 (2d Cir.1995) (holding that a landlord's failure to grant a disabled tenant an exception to 'first come-first served' waiting list for tenant parking substantially affected tenant's use and enjoyment of her dwelling.)).

The Court finds that Plaintiff has shown serious questions going to the merits.

Plaintiff has also shown a fair chance of prevailing on her claim that her Housing Choice Voucher was terminated in violation of the Due Process Clause's protections requiring notice of the alleged violations that form the basis of a proposed termination and procedures that are reasonably calculated to not erroneously deprive her of a protected interest.

For Defendant to be liable under a Due Process Clause claim, Plaintiff must show that the unconstitutional violation occurred because of a policy, practice, or custom of the Defendant. When analyzing due process procedures, the Court must first look to whether a constitutionally protected interest is at stake. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). If such an interest exists, the Court must then look to whether the state's procedures are constitutionally sufficient to deprive the person of their interest. *Id.* These three factors are weighed to determine whether a set of procedures is adequate:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Ninth Circuit has determined that a housing voucher is a property interest subject to the protections of the Due Process Clause, and even small changes can have a significant impact on public housing tenants. *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015), as amended on denial of reh'g and reh'g en banc (9th Cir. 2016).

Plaintiff argues that the procedures provided to Plaintiff risked erroneous deprivation of her right to procedural safeguards. For example, at the time Defendant announced its intent to terminate Plaintiff's housing voucher, Plaintiff should have been informed of her right to request an accommodation under Defendant's own Administrative Plan. The Administrative Plan provides:

> A PHA's decision to deny or terminate the assistance of a family that includes a person with disabilities is subject to consideration of reasonable accommodation [24 CFR 982.552 (2)(iv)].
>
> When applicants with disabilities are denied assistance, the notice of denial must inform them of the PHA's informal review process and their right to request an informal review. In addition, the notice must inform applicants with disabilities of their right to request reasonable accommodations to participate in the informal review process.
>
> When a participant family's assistance is terminated, the notice of termination must inform them of the PHA's informal hearing process and their right to request a hearing and reasonable accommodation.
>
> When reviewing reasonable accommodation requests, the PHA must consider whether any mitigating circumstances can be verified to explain and overcome the problem that led to the PHA's decision to deny or

> terminate assistance. If a reasonable accommodation will allow the family to meet the requirements, the PHA must make the accommodation.

Dkt. 12 (Declaration of Magali Cota) at Exhibit 1. Here, Defendant's notice of termination did not advise Plaintiff of her right to a reasonable accommodation.

Turning to the third *Mathews* inquiry, affording the procedure requested by the Plaintiff would place little burden on the Defendant. Plaintiff requests an informal hearing and the opportunity to present her reasons why the Defendant should continue providing her with a housing voucher, even though her appeal was filed after the deadline given by the Defendant.

Thus, Plaintiff shows a "fair chance" of prevailing under the Due Process Clause as well.

(2) Irreparable Harm

Plaintiff states in her declaration that without this voucher, she will be unable to pay rent in May and will be evicted from her home. Dkt. 11 at ¶16. Plaintiff contends that if she is forced to move from her current home, she faces the possibility of becoming homeless. Further, Plaintiff's tenant history is likely to be irreparably harmed by the mere filing of an eviction, even if she were to ultimately prevail in that action.

A plaintiff must demonstrate they are likely to suffer irreparable harm in the absence of a preliminary injunction. *See Winter,* 555 U.S. at 20. The Ninth Circuit has cautioned that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988). In general a plaintiff seeking injunctive relief must establish that "remedies available at law, such as monetary damages, are inadequate to

compensate" for the injury. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,* 736 F.3d 1239, 1249 (9th Cir.2013).

In this case, the FHA specifically authorizes the Court to grant "any permanent or temporary injunction" and "temporary restraining order." See 42 U.S.C. § 3613(c)(1) ("In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may ... grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).").

Wrongful eviction is not an injury for which remedies available at law are adequate. If Plaintiff is evicted and an innocent third party rents the property, the Court may not have authority return Plaintiff to her original home. See 42 U.S.C. § 3613(d); *Smith v. Brown,* 2010 WL 3120203, *7 (W.D.Wash.2010) (in the context of an allegedly discriminatory eviction, finding "irreparable harm if the injunction does not issue because the home itself will forever be lost for Plaintiffs' use and enjoyment ... [It] will not exist for Plaintiffs to move back into should they ultimately succeed in their case."). The Court finds that Plaintiff has made a sufficient showing of irreparable injury.

(3) Balance of Equities and Public Interest

The balance of harms tips sharply in favor of granting the motion for preliminary injunction because when faced with a conflict between financial concerns and preventable human suffering – here, eviction and relocation of an indigent individual with mental health disabilities –the balance of hardship tips in the favor of preventing human suffering. The Defendant's harm, by contrast, is minimal and they could continue

to allow for the payment of the voucher. Defendant states granting this preliminary injunction would create a hardship for them because "Defendant has to have funding available in order to be able to provide a voucher." Dkt. 14 at 6. But Defendant does not provide evidence that they do not have funding available to issue a new voucher or an expectation that a new voucher will not become available. *Id. See also* Dkt. 15, Declaration of Shelly Watkins, at 3 ("Ms. Buckholz's voucher has been terminated, and it is contingent on available funding.")

(4) Public Interest

Finally, the Court must consider whether the public interest would be furthered by the issuance of a preliminary injunction. *See Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 725 F.3d 940 (9th Cir. 2013). This factor, too, weighs in favor Plaintiff's favor.

In the FHA, Congress declared that "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. Accordingly, courts have emphatically declared that the public interest is served by effective enforcement of the FHA. *See, e.g., Gonzalez v. Recht Family Partnership,* 51 F. Supp. 3d 989, 992–93 (S.D.Cal. 2014) (upon a showing of likelihood of success on the merits and irreparable harm, finding that plaintiff met the public interest requirement because "[t]he public interest has been authoritatively declared by Congress in its enactment of the FHA") (citation omitted); *see also U.S. v. Com. of Puerto Rico,* 764 F.Supp. 220, 225 (D.Puerto Rico 1991) (emphasizing "the public interest that all citizens have in seeing vigorous enforcement of civil rights

PRELIMINARY INJUNCTION (DKT. 10) - 12

legislation like the Fair Housing Act" in concluding that "the public interest weighs heavily in favor of a preliminary injunction.").

This significant public interest "is an important consideration in the exercise of equitable discretion in the enforcement of statutes." *U.S. v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 176 (9th Cir.1987).

Therefore, in this case, where the statute authorizes injunctive relief "as the court deems appropriate" to enforce the FHA, 42 U.S.C. § 3613(c), the public interest is served by the entry of a preliminary injunction.

## CONCLUSION

The Court grants Plaintiff's motion for a preliminary injunction. Plaintiff has met the criteria; Plaintiff has shown serious questions going to the merits, she faces irreparable harm in the absence of an injunction, the injunction serves the public interest, and that the balance of hardship tips in her favor.

Usually, a bond is a condition precedent to the issuance of a preliminary injunction. Fed. R. Civ. P. 65(c). But the Court may waive the bond when a plaintiff cannot afford its cost or when there is little, or no, harm to the party being enjoined. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). Plaintiff, here, is indigent. No bond will be required under Fed. R. Civ. P. 65(c).

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for a Preliminary Junction is GRANTED. The Court orders that the Defendant is enjoined from refusing to make Housing Assistance Program payments to Plaintiff's landlord under the Housing Choice Voucher program, must immediately

reinstate payment, and make Housing Assistance Payments on an ongoing basis as it did before the present controversy for the pendency of this Order and until the Court vacates this Order.

This injunction shall be binding as provided in Fed. R. Civ. P. 65(d) and shall remain in effect until further order of the Court.

Dated this 30th day of April, 2025.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER ON PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION (DKT. 10) - 14